720 A.2d 339

IN THE MATTER OF THE APPLICATION OF WILLIAM C. LA TOURETTE FOR ADMISSION TO THE BAR.

Argued September 14, 1998—Decided December 4, 1998.

*Walton W. Kingsbery, III,* argued the cause for presenter Committee on Character.

*William C. La Tourette*, argued the cause, pro se (*Margaret A. Holbrook*, attorney; *Ms. Holbrook*, of counsel and on the brief).

PER CURIAM.

William C. La Tourette passed the written examination for the New Jersey Bar in 1997. His Certified Statement for admission to the New Jersey Bar disclosed a number of issues requiring further investigation, including arrearages in child support, various questionable civil suits, and intemperate interaction with the New Jersey Board of Bar Examiners (Bar Examiners) and members of his law school community. An RG 303 Panel, convened pursuant to Regulation 303 of the Regulations Governing the Committee on Character (RG 303), recommended that La Tourette's certification for admission to the New Jersey Bar be granted on the condition that he not engage in solo practice for a year unless under the auspices of a supervising attorney approved by the Committee. A Statewide Panel reviewed La Tourette's application for admission as required by RG 303(8). In its Report and Recommendation, the Statewide Panel recommended that certification of good character be withheld. The Statewide Panel forwarded its report and the record to this Court. On June 16, 1998, we ordered La Tourette to show cause why certification of his application for admission to the New Jersey Bar should not be withheld for failure to meet the requirements of good character and fitness. The matter was presented to the Court on September 14, 1998.

In determining that La Tourette was unfit to practice law, the Statewide Panel relied on findings that the candidate had made insufficient efforts to reduce arrearages of $14,000 in child support; had disclosed a client's confidence while working as a law clerk; had demonstrated disrespect for judicial personnel, procedures and institutions by engaging in a course of litigation challenging bar admission procedures; and had employed the Fair Debt Practices Act not as a means to avoid collection of monies

that he did not owe, but as a means to obtain revenue to support himself.

Two members of the Statewide Panel disagreed with the majority's recommendation. They found that because of La Tourette's inexperience at the time when he disclosed the client's confidences, La Tourette believed that disclosure was necessary to prevent the perpetration of a fraud on the tribunal. The client had told La Tourette about a prior incident related to the assault with which the client had been charged. Without the knowledge of his attorney employer, La Tourette wrote a memorandum informing the court of the client's statements. The two panelists found that La Tourette's credit litigation was a reasonable exercise of rights under the act, as evidenced by the settlement of the cases by the creditors. The panelists also found that his lawsuits against the Bar Examiners and Rutgers University School of Law were motivated by a genuine belief that he had been wronged.

Based on our independent review of the record, we find clear and convincing evidence that La Tourette presently lacks the character and fitness to practice law. Although his credit litigation may have been justified, his intemperate exchanges with Bar Examiners personnel and his litigation against the Bar Examiners and his law school demonstrated an unwillingness to accept any personal responsibility for his difficulties. (La Tourette had unsuccessfully taken the bar examination seven times.) In one letter to the Secretary of the Bar Examiners, La Tourette characterized all communications with the Bar Examiners as "marked by petty cruelty." He added that a court order compelling him to pay the examination fee was a "fraud and deceit," and that the Bar Examiners had committed acts of "purposeful harassment and cruelty." His suit against his law school charged that its failure of performance caused him to fail the bar examination. His suit against the Bar Examiners exhibited a callous disregard of the rights of others. One lawsuit sought to restrain the publication of bar results. La Tourette filed three separate federal suits, one of which sought injunctive relief to strike down the requirement of

passage of a bar examination as a prerequisite for a license to practice law. These bar-related suits were all summarily dismissed by federal and state courts. Although not yet bound by Rule of Professional Conduct 3.1, which requires a lawyer to have a good faith basis for bringing or defending suit, La Tourette is covered by the provisions of *N.J.S.A.* 2A:15–59.1, the frivolous litigation statute. A claim constitutes frivolous litigation if "judging the [claimant's] conduct as a whole," the claim "was brought in bad faith, for the purpose of delay and harassment." *Deutch & Shur, P.C. v. Roth,* 284 *N.J.Super.* 133, 139, 663 *A.*2d 1373 (Law Div. 1995). Given the summary disposition of his claims, they may be viewed as bordering on the frivolous. La Tourette further demonstrated his lack of respect for judicial officers and institutions by surreptitiously recording conversations with Bar Examiners personnel. We conclude that La Tourette's statements and correspondence concerning the conduct of the Bar Examiners show such marked disrespect for judicial personnel, procedures and institutions as to belie a fidelity to the administration of justice. *In re McLaughlin,* 144 *N.J.* 133, 154, 675 *A.*2d 1101 (1996). We agree with the Statewide Panel that certification of La Tourette's application for admission should be withheld.

Because the Court's concerns are with an applicant's present fitness to practice law, evidence of reform and rehabilitation becomes relevant to an assessment of an applicant's moral character. *In re Matthews,* 94 *N.J.* 59, 81, 462 *A.*2d 165 (1983). "Where evidence convincingly demonstrates reform and rehabilitation, it can overcome the adverse inference of unfitness arising from past misconduct and, if persuasive, present fitness may be found." *Ibid.* Although we find respondent presently unfit to practice law, we do not find that the candidate's character is unsalvageable. His very persistence at gaining admission demonstrates a strong desire to become a member of the bar. What is missing is an acceptance and understanding of what is expected from every member of the bar concerning civility and respect for judiciary personnel and everyone with whom an attorney comes in contact.

The following types of evidence are probative of reform and rehabilitation: (1) an applicant's "complete candor in all filings and proceedings conducted by the Committee on Character"; (2) an applicant's "renunciation of the past misconduct"; (3) "[t]he absence of any misconduct over a period of intervening years"; (4) "a particularly productive use of [the applicant's] time subsequent to the misconduct"; and (5) "[a]ffirmative recommendations from people aware of the applicant's misconduct who specifically consider the individual's fitness in light of that behavior." *Id.* at 82, 462 *A.*2d 165.

We do not foreclose the possibility that La Tourette will be able to produce sufficient evidence of the character traits necessary to establish his fitness to practice law. *In re Jenkins,* 94 *N.J.* 458, 470–71, 467 *A.*2d 1084 (1983). Such evidence could, we suggest, demonstrate that he has consistently supported his children, has implemented a plan for repayment of any remaining creditors, has availed himself of the justice system only consistent with the standards expected of one aspiring to become a member of the bar, and perhaps has become involved in community service or volunteer activities. Finally, he must demonstrate that "when placed in a position of responsibility, he can act honestly and truthfully and with trustworthiness and reliability in his dealing with others." *Matthews, supra,* 94 *N.J.* at 83, 462 *A.*2d 165.

Accordingly, we adopt the Committee's recommendation and direct that certification of the candidate's character and fitness be withheld without prejudice to the candidate's right to present to the Committee, no earlier than two years from the filing date of this opinion, evidence of rehabilitation in accordance with *Matthews, supra,* and this decision.

*For withholding*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.

ORDER

This matter having come before the Court on an Order to Show Cause why the character certification of WILLIAM C. LA TOURETTE should not be withheld, and good cause appearing;

It is ORDERED that certification of the candidate's character and fitness is withheld, without prejudice to his right to present to the Committee on Character, no earlier than two years from the filing date of this opinion, evidence of rehabilitation in accordance with *In re Matthews*, 94 *N.J.* 59, 462 *A.*2d 165 (1983) and the Court's opinion in the within matter.